UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

Mark P. O.,

                                    Plaintiff,

v.                                                          5:23-CV-00186 (MAD)

MARTIN O'MALLEY,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION, [1]

                                    Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC       JUSTIN GOLDSTEIN, ESQ.
  *Attorney for Plaintiff*
6000 N. Bailey Ave., Suite 1A
Amherst, New York 14226

UNITED STATES ATTORNEY'S OFFICE           CARLA B. FREEDMAN, ESQ.
NORTHERN DISTRICT OF NEW YORK
  *Attorney for Defendant*
100 S. Clinton St.
Syracuse, NY 13261

SOCIAL SECURITY ADMINISTRATION            VERNON NORWOOD, ESQ.
OFFICE OF GENERAL COUNSEL
  *Attorney for Defendant*
6401 Security Boulevard
Baltimore, MD 21235


**MAE A. D'AGOSTINO**, United States District Court Judge

## **DECISION AND ORDER**

_____

[1] Martin O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this suit.

Plaintiff Mark P. O. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant") denying his application for Supplemental Security Income ("SSI"). (Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 10, 14, 16.) Oral argument was not heard. For the reasons discussed below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on January 3rd, 1992. Administrative Transcript at 494.[2] He completed some high school and earned a GED while incarcerated in 2013. R. at 554. Plaintiff filed for Supplemental Security Income ("SSI") on February 9, 2018, alleging an onset date of September 4. 2017.[3] R. at 501. He alleges disability as a result of multiple sclerosis, attention deficit hyperactivity disorder, attention deficit disorder, numbness in his right leg and hand, depression, anxiety, panic attacks, and chronic pain. R. at 553, 583, 607. Plaintiff's claim was initially denied on June 11, 2018. R. at 136. He then submitted a request for reconsideration on July 9, 2018. R. at 198. Plaintiff's claim was denied at the reconsideration level on September 20, 2018. R. at 156. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ")

---

[2] The Administrative Transcript is found at Dkt. No. 10. Citations from the Administrative Transcript will be referred to as "R." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns. All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system.

[3] Plaintiff filed an application for Disability Insurance Benefits ("DIB") on September 6, 2017, alleging an onset date of September 4, 2017. (R. at 494, 543.) Plaintiff's application for DIB was denied on October 16, 2017, because Plaintiff had not worked long enough to qualify for disability benefits. (R. at 191.) No determination was made at that time regarding Plaintiff's disability status. *Id.* Only Plaintiff's later application for SSI is at issue in this case.

on October 22, 2018.  R. at 205.  After several delays an in-person hearing was scheduled for

September 24, 2019.  R. at 284.  ALJ Elizabeth W. Koennecke conducted the September 24,

2019, hearing and took testimony from Plaintiff.  *See* R. at 96-115.  The ALJ scheduled a

supplemental hearing for February 5, 2020, for the sole purpose of taking additional testimony

from a Vocational Expert ("VE").  R. at 301, 321.  Plaintiff waived his right to appear at that

hearing.  R. at 379.  The ALJ composed a hypothetical for the VE to answer based on the

Dictionary of Occupational Titles ("DOT"), and the VE responded in a written interrogatory on

February 11, 2020.  R. at 667-68.  On March 2, 2020, the ALJ issued a written decision finding

Plaintiff was not disabled under the SSA.  R. at 171.  On May 15, 2020, Plaintiff requested that

the Social Security Appeals Council review the ALJ's decision.  R. at 390-92.  The Appeals

Council determined that the ALJ erred when she failed to provide Plaintiff a copy of the VE's

interrogatory responses, and when she relied on the VE's answer where it was inconsistent with a

limitation expressed in the DOT.  R. at 180-81.  The Appeals Council therefore remanded

Plaintiff's case to the ALJ on February 22, 2021.  R. at 178-79.

A new hearing before the ALJ was scheduled for June 14, 2021.  R. at 441.  At that

hearing, Plaintiff waived the right to testify further.  R. at 120.  Plaintiff's counsel asserted that

the evidentiary record was complete.  *Id.*  The ALJ heard the testimony of VE Esperanza

Distefano.  R. at 120-24.  Plaintiff's representative did not offer any questions to the VE.  R. at

124.  On November 3, 2021, the ALJ issued a written decision finding Plaintiff was not disabled

under the SSA.  R. at 12.  Plaintiff again requested review of the ALJ's decision by the Appeals

Council.  R. at 7-8.  The ALJ's decision became the final decision of the Commissioner of Social

Security when the Appeals Council denied Plaintiff's request for review on January 3, 2023.  R.

at 1-3.  Plaintiff timely commenced this action on February 9, 2023.  Dkt. No. 1.

II.    **APPLICABLE LAW**

    A.  **Scope of Review**

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by

substantial evidence, the Commissioner's findings must be sustained "even where substantial

evidence may support the plaintiff's positions and despite that the court's independent analysis

of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147,

153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative

record in place of the Commissioner's if the record contains substantial support for the ALJ's

decision. *See Rutherford*, 685 F.2d at 62.

### B. Standard for Benefits[4]

To be considered disabled, a plaintiff seeking disability benefits must establish that they

are "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

---

[4] While the Supplemental Security Income program has special economic eligibility
requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. §
1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are
cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d
Cir. 1983) (citation omitted).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) whether the claimant has a severe impairment or combination of impairments;
>
> (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;
>
> (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and
>
> (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (spacing added.); *see also Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets their burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520a, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental

6

impairments.  *See id.*  SSR 96-8p stresses that the "special technique" described in 20 C.F.R. §

404.1520a is *not* an RFC assessment, and further, the mental RFC assessment used at steps four

and five "requires a more detailed assessment."  SSR 96-8P (S.S.A. July 2, 1996).  This "special

technique" is used by ALJs to determine, as a threshold matter, whether a claimant has one or

more medically determinable mental impairments.  *Amanda R. v. Comm'r of Soc. Sec.*, 556 F.

Supp. 3d 145, 151 (N.D.N.Y. Aug. 17, 2021).  If the claimant suffers from one or more

impairments, "[t]his technique also enables administrative law judges to determine whether

[those] medically determinable mental impairments are severe (a Step 2 issue) and whether they

meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3

issue)."  *Id.*

    At the first step of this special technique, the ALJ must evaluate "symptoms, signs, and

laboratory findings" to determine whether the claimant has one or more medically determinable

mental impairments.  20 C.F.R. § 404.1520a(b)(1).  If so, at step two of the special technique the

ALJ must rate the degree of functional limitation that results from the medically determinable

mental impairment(s).  20 C.F.R. § 404.1520a(b)(2).  This involves the consideration of the

degree of functional limitation present in "four broad functional areas": (1) understanding,

remembering or applying information; (2) interacting with others; (3) concentrating, persisting,

or maintaining pace; and (4) adapting and managing oneself.  20 C.F.R. § 404.1520(c)(3).[5]

    These four functional areas are measured on a five-point scale that ranges between

"none," "mild," "moderate," "marked," and "extreme," with the last point on the scale

representing "a degree of limitation that is incompatible with the ability to do any gainful

---

[5] These areas of functioning, also known as "B Criteria," were revised on January 17, 2017.
Prior to January 17, 2017, they were known as "activities of daily living," "social functioning,"
"concentration, persistence, or pace," and "episodes of decompensation."

activity." 20 C.F.R. § 404.1520a(c)(4).  If, however, the degree of limitation in each of these areas is "none" or "mild," the impairment will be considered non-severe absent evidence that "otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1); *see also Ornelas-Sanchez v. Colvin*, 632 F. App'x 48 (2d Cir. 2016) (ALJ failed to properly follow the special technique, and effective review was frustrated, where he only "conclusory noted" that the record showed that plaintiff's impairments caused more than minimal functional limitations and interfered with her ability to perform some basic work-related activities.)

## C.  Standard for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[6] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the 2017 regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ

---

[6] Plaintiff's application was filed January 22, 2021.  T. at 22.  Thus, the new regulations apply in her case.

must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quoting 20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1)).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. *Andrew G.*, 2020 WL 5848776, at *5 (quoting 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2)).  With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).  The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)).

An ALJ must "'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.'" *Brian O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § § 404.1520c(a)-(b)(1), 416.920c(a)-(b)(1)).  Furthermore, although an ALJ is specifically required to "explain

how [she] considered the supportability and consistency factors," "an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)).

### III.    The ALJ'S DECISION

In her November 3, 2021, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* R. at 16-17. As an initial matter, the ALJ acknowledged the Appeals Council's two directives on remand. R. at 15. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 6, 2017. R. at 17. At step two, the ALJ determined that Plaintiff has the following severe impairments: "multiple sclerosis and a mental impairment (variously characterized) []." *Id.* (citing 20 C.F.R. § 416.920(c)).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"). R. at 18-19. The ALJ considered whether Plaintiff's mental impairments meet or medically equal listing 11.09 ("Multiple sclerosis"), 12.04 ("Depressive, bipolar and related disorders"), 12.06 ("Anxiety and obsessive-compulsive disorders"), 12.08 ("Personality and impulse-control disorders"), and 12.11 ("Neurodevelopmental disorders"). *Id.*

The ALJ applied the B Criteria at this step, determining as follows: "in understanding, remembering, or applying information, the claimant has a mild limitation," "[i]n interacting with others, the claimant has a moderate limitation," "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation," and "[a]s for adapting or managing oneself, the claimant has experienced a moderate limitation." R. at 19. As the ALJ did not assign at least two marked or one extreme limitation, she concluded that Plaintiff's mental impairments did not satisfy the B Criteria. *Id.* The ALJ also determined that the evidence fails to establish the presence of the C Criteria. R. at 19-20.

At step four, the ALJ found that Plaintiff has the RFC for light work, with exertional and non-exertional limitations. R. at 20. The ALJ determined Plaintiff "can stand or walk for 2 hours in an 8-hour day and can have no exposure to hazards." *Id.* Regarding non-exertional limitations, the ALJ determined that Plaintiff can:

> understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; handle simple, repetitive work-related stress in that the claimant can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others; should avoid work requiring more complex interaction or joint effort to achieve work goals; and can have no contact with the public.

*Id.* The ALJ noted that Plaintiff has no past relevant work, was 25 years old at the date of application, and has at least a high school education. R. at 28. The did not address transferability of job skills because Plaintiff has no past relevant work. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs in significant numbers in the national economy that Plaintiff could perform. *Id.* Thus, the ALJ

determined Plaintiff has not been under a disability, as defined in the Social Security Act, from September 6, 2017, until the date of the ALJ's decision, November 3, 2021.  R. at 29.

## IV.    THE PARTIES' CONTENTIONS

Plaintiff contends that the ALJ erred by failing to include materials from Plaintiff's prior applications for SSI in the current record.  Dkt. No. 10 at 14.  Plaintiff argues that, given the non-adversarial nature of proceedings before the Social Security Administration, the ALJ should have incorporated the prior record to help determine if Plaintiff continues to be disabled by the same impairments.  *Id.*  Plaintiff argues that the ALJ was required to obtain Plaintiff's prior file first because the SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") compelled them to do so, second because the SSA's prior determination raises an issue of *res judicata*, and third because the information contained in Plaintiff's file remains relevant to the present case. *Id.* at 14-15.  Plaintiff also argues that the ALJ's failure to incorporate the prior file was a legal error because a state agency reviewing psychologist had access to the file and "based her evaluation at least partially from the information in the prior folder."  *Id.* at 15.

Plaintiff also contends that substantial evidence does not support the ALJ's RFC determination, because the ALJ erred in evaluating the medical opinions.  *Id.* at 16.  Specifically, Plaintiff argues that the ALJ erred by excluding from the RFC portions of the state agency reviewing doctor's assessments regarding exposure to extreme cold and vibration, as well as postural limitations.  *Id.*  Plaintiff argues that the ALJ erred by reducing or rejecting mental limitations contained in medical opinions she evaluated as persuasive without explanation.  *Id.* at 21.

Defendant contends that Plaintiffs arguments based on HALLEX are meritless because HALLEX lacks the force of law.  Dkt. No. 14 at 8.  Defendant argues that the record was

developed to a sufficient extent to support the ALJ's findings. *Id.* at 9. Defendant also contends that the ALJ's RFC is supported by substantial evidence, and if the ALJ's erred by not adopting environmental and postural limitations, then the error was harmless because the jobs identified by the ALJ at step five do not transgress the stated limitations. *Id.* at 13. Defendant argues finally that the ALJ's evaluation of the opinion evidence was not legally erroneous. *Id.* at 15-16.

## V.   THE COURT'S ANALYSIS

### A. Substantial evidence supports the ALJ's assignment of a light RFC with exertional limitations rather than a sedentary RFC

A claimant's RFC is the most he or she can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

### I. The ALJ supported the environmental and postural limitations in Plaintiff's RFC with substantial evidence

An ALJ is "not obligated to adopt every limitation set forth in a medical opinion [she] found persuasive." *Edward J. v. Kijakazi*, No. 5:21-CV-150, 2022 WL 4536257, at *5 (N.D.N.Y. Sep. 28, 2022) (quoting *Jennifer Lee W. v. Berryhill*, No. 5:18-CV-64, 2019 WL 1243759, at *4 (N.D.N.Y. Mar. 18, 2019)).  In the instant case, the ALJ found the PAMFs of state agency medical consultants S. Ram Upadhyay, M.D., K. Malin Weeratne, M.D., JoAnne Coyle, PhD., and Nancy Keuthen, Ph.D., generally persuasive.  (R. at 26-27.)  The ALJ preferred Dr. Weeratne's assessment that Plaintiff should "[a]void all exposure" to hazards, such as machinery and heights, over Dr. Upadhyay's assessment that Plaintiff should merely "[a]void concentrated exposure."  R. at 26-27 (referencing R. at 151, 133).  The ALJ declined to adopt Drs. Weeratne and Upadhyay's other environmental and postural limitations, finding the limitations inconsistent with "the claimant's lack of on-going difficulties balancing or engaging in range of motion tasks during physical examinations and lack of complaints regarding cold temperatures and/or vibrations exacerbating his symptoms."  R. at 27.  Regarding the environmental limitations for cold and vibration, an ALJ is "entitled to rely not only on what the record says, but also on what it does not say."  *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)).  The ALJ properly excluded environmental limitations which Plaintiff himself never raised, and no record evidence supports.

Regarding the postural limitations, the ALJ has outlined an inconsistency between Drs. Weeratne and Upadhyay's opinions and the record; "In our review, we defer to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).  The ALJ relied on Plaintiff's good balance and range of motion during physical exams to discount postural limitations.  R. at 27.

14

The record generally supports Plaintiff's good balance and range of motion, but it is also replete with complaints of pain. During a September 4, 2017, visit to the emergency room, Plaintiff had "[n]ormal range of motion" with "no tenderness or deformity," but with "4/5 strength in [right upper extremity] and [right lower extremity]," "pronator drift on [right], finger to nose impaired on right," and "unsteady gait." R. at 817. Plaintiff was able to lay down, sit up, and stand up without assistance during an occupational therapy general evaluation one day later. R. at 847. However, during that visit Plaintiff was assessed to have several deficits to his flexion, abduction, and extension strength in his right upper extremity. R. at 846. During a physical therapy evaluation, also performed on September 5, 2017, Plaintiff reported needing no assistance with mobility and did not require assistance laying down, sitting up, or standing up. R. at 853-54. His range of motion in his right and left lower extremities was "[w]ithin functional limits," while his strength in his right lower extremity was "[i]mpaired" to a "3+/5" in all categories. R. at 859.

Plaintiff visited to the emergency room again on January 28, 2018, and presented with "new onset bilateral leg weakness." R. at 746. After several days, and having received several doses of steroids, Plaintiff had strength and range of motion "[w]ithin normal limits" in his upper extremities. R. at 748. Plaintiff used a cane, but otherwise did not require assistance with mobility. R. at 748-49. He was discharged on February 1, 2018, with "some [lower extremity] weakness and right eye blurriness," but reported improvements since being admitted. R. at 918. Plaintiff was seen in an outpatient setting on March 2, 2018, where he exhibited "increased tone in legs, no spontaneous abnormal movements, muscle strength is 5/5 throughout **except 5- L deltoid**." R. at 1386 (emphasis in original). At a follow-up visit on June 18, 2018, Plaintiff had "increased tone in legs, no spontaneous abnormal movements," and "5/5" muscle strength

15

"throughout **except 5- in L IP.**"  R. at 1183 (emphasis in original).  His coordination was "**mild L dysmetria**" with a "**normal based**" gait.  *Id.* (emphasis in original).  At a second follow-up appointment on October 1, 2018, Plaintiff's motor, coordination, and gait exam results were the same as in June of 2018.  *See* R. at 1396.

At a January 17, 2020, physical exam, Plaintiff had "normal range of motion" with some tenderness, "[n]o focal weakness" and "symmetrical" reflexes.  R. at 1810.  Plaintiff also had "[n]o abnormal muscle tone."  R. at 1811.  However, at a January 20, 2020, follow-up, Plaintiff was "[p]ositive for **arthralgias**, **back pain**, **myalgias**, and **neck pain**."  R. at 1883 (emphasis in original).  He exhibited a "[n]ormal range of motion," but with tenderness in his "**shoulders and neck**."  R. at 1883 (emphasis in original).  During a telemedicine call on April 10, 2020, Plaintiff reported "**back pain** and **myalgias**" but no "arthralgias."  R. ar 1969.  On April 15, 2020, Plaintiff presented for a follow-up exam complaining of "[n]eck pain."  R. at 1706.  Other than neck pain, he was "[n]egative for arthralgias, back pain, and myalgia," with a "[n]ormal range of motion."  R. at 1706-07.  Plaintiff was likewise "[n]egative for arthralgias, back pain, and myalgias" with a "[n]ormal range of motion" on April 27, 2020.  R. at 1961-62.  Plaintiff was in a great deal of pain on October 2, 2020, and presented with "**back pain** and **myalgias**" on the "[**w**]**hole left side of his body**."  R. at 1978 (emphasis in original). Plaintiff had a "[n]ormal range of motion," with "**tenderness**," but "no edema or deformity."  R. at 1979 (emphasis in original).  At a November 11, 2020, primacy care visit, Plaintiff was "[n]egative for arthralgias, back pain, and myalgias," with a "[n]ormal range of motion."  R. at 1655-56.  At another visit on November 30, 2020, Plaintiff was again "[n]egative for arthralgias, back pain and myalgias."  R. at 1859.

On March 26, 2021, Plaintiff presented at a specialist appointment at Upstate University Hospital with "arthralgias, back pain, [a] gait problem, joint swelling, and myalgias," although he was "[n]egative for neck pain and neck stiffness." R. at 1817. At an April 7, 2021, visit at St. Joseph's Hospital Health Center, Plaintiff was "[p]ositive for back pain and myalgias. Negative for arthralgias." R. at 1582. He exhibited "**muscular pain/tenderness upon palpation of the rhabdoid major**." R. at 1583 (emphasis in original).

Given a searching assessment of the record, the ALJ's discounting of postural limitations was supported by substantial evidence, and the Court will not reweigh that evidence. *See Warren v. Comm'r of Soc. Sec*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016). The ALJ's findings of fact here was not so unavailing that "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8ᵗʰ Cir. 1994)). Plaintiff has not demonstrated an error of law in the ALJ's assessment, and, since the ALJ's postural and environmental determinations are supported by substantial evidence, this court will second guess the ALJ's conclusion. *Lefford*, 916 F. Supp. at 155 (quoting *White v. Shalala*, 823 F. Supp. 621, 623 (N.D. Ind. 1993)).

In any case, if this Court were to reject the ALJ's postural and environmental limitations as not supported by substantial evidence, the error would have been harmless: marker, silver wrapper, and electrical accessories assembler, the three jobs mentioned by the VE as suitable for someone with Plaintiff's RFC, do not require climbing, stooping, balancing, kneeling, crouching, crawling, exposure to cold, or vibrations as a matter of course.  *See Dictionary of Occupational Titles*, 4th ed. rev. 1991, Job Nos. 209.587-034, 318.687-018, 729.687-010 (DOT)[7].  However, as Plaintiff points out, the jobs identified by the VE at the sedentary level (document preparer, addressor, and touch up screener) are either obsolete or exist in such insignificant numbers that they cannot be the basis for a finding at Step 5.  *See* Dkt. No. 10 at 20-21.  The ALJ offered "document preparer," "addressor," and "touch up screener" as jobs that Plaintiff would be capable of performing at the sedentary level. R. at 29. District courts in the Second Circuit have repeatedly

> recognized the obsolete nature of the document preparer position
> and remanded for further administrative proceedings where there is
> no record evidence of other jobs existing in significant numbers
> that a plaintiff can perform.

*Corey S. v. Comm'r of Soc. Sec.*, 5:20-CV-0678 (ML), 2021 WL 2935917, at *10 (N.D.N.Y. Jul. 13, 2021) (citing *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 222-23 (E.D.N.Y. 2021) (collecting cases).  A "document preparer" is someone who "[p]repares documents … for **microfilming**."  *Id.* (quoting *Zacharopoulos*, 516 F. Supp 3d at 221) (emphasis added).

---

[7] A "marker" "[m]arks and attaches price tickets to articles of merchandise to record price and identifying information," a "silver wrapper" '[s]preads silverware on absorbent cloth to remove moisture," and "[w]raps individual place settings in napkins or inserts them with prescribed accessory condiments in plastic bag and closes bag with electric sealer," and an "assembler" of "electrical accessories" "[a]ssembles mechanical parts of electrical equipment, such as light sockets, switches, terminal boards, and plugging devices."  DOT Job Nos. 209.587-034, 318.687-018, 729.687-010.

> That the technology underlying such a career is rapidly descending
> into obsolescence can be readily demonstrated: at this writing, a
> growing number of Americans are unacquainted with
> "microfilming," "rubber stamps" and perhaps even
> "photocopying." And while microfilm may still service some
> obscure, niche markets, in the digital economy, its trajectory
> resembles that of carbon paper and punch cards.

*Id.* (quoting *Zacharopoulos*, 516 F. Supp 3d at 222).

"Addresser" has likewise been found obsolete: "the definition for addresser refers to

literally addressing items for mailing by hand or typewriter, which fails to account for minor

recent inventions such as the computer and the internet." *Pamela v. Kijakazi*, 5:20-CV-00304,

2021 WL 4307457, at \*6 (N.D.N.Y. Sep. 22, 2021) (quoting DOT Job No. 209.587-010); *see*

*also Hawthorne v. Comm'r of Soc. Sec.*, No. 1:20-CV-02247, 2021 WL 4356009, at \*2

(E.D.N.Y. Sep 24, 2021) (stating "addresser … no longer exist[s] as an isolated role, at least not

in significant numbers.")

Finally, Plaintiff is correct in his assertion that jobs as a "touch up screener" do not exist

in sufficient quantities for the ALJ to have met their burden at Step 5. *See Kathy H. v. Comm'r*

*of Soc. Sec.*, No. 5:19-CV-684 (ATB), 2020 WL 3960846, at \*15-16 (N.D.N.Y. Jul. 13, 2020)

(collecting cases). The ALJ stated that 1000 "touch up screener" jobs exist in the national

economy. R. at 29. The court in *Vining v. Astrue* noted "that numbers of jobs in the ballpark of

10,000 to 11,000 nationwide have been held 'significant.'" 720 F. Supp. 2d 126, 137 (D. Me.

2010) (citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997); *McGee v. Astrue*, CV No. 08-

0831, 2009 WL 2841113, at \*6 n.14 (W.D. La. Aug. 28, 2009)). In *Beltran v. Astrue*, the court

held that 1,680 jobs nationally and 135 jobs regionally was not a "significant number." 700 F.3d

386, at 390 (9th Cir. 2012). Here, the VE never stated how many "touch up screener" jobs might

exist regionally. *See* R. at 123. Considering that national numbers greater than 1,000 have been

found not significant, and the record provides no insight as to how many touch up screener jobs exist regionally, the 1,000 national touch up screener jobs could not qualify as significant at Step 5.

The ALJ here failed to identify jobs in significant numbers in the national or local economy which Plaintiff could perform at the sedentary level.  However, since the environmental and postural portion of Plaintiff's RFC are supported by substantial evidence, the ALJ supportably concluded that Plaintiff retains an RFC for light work with exertional limitations, and the ALJ identified jobs in significant numbers at that level which Plaintiff could perform, the error here was harmless.  *See Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 272 (D. N.J. 2022) (noting "the ALJ need only provide one job that a claimant can perform that exists in significant numbers in the national economy.") (quoting *Penrose v. Comm'r of Soc. Sec.*, No. 20-00011, 2020 WL 7640585, at *7 (D. N.J. Dec. 23, 2020)).

## II. The ALJ incorporated the non-exertional limitations indicated by state agency reviewing doctors

In crafting a claimant's RFC, an ALJ must consider each relevant medical opinion and prior administrative medical finding and articulate how persuasive they found them.  20 C.F.R. § 416.920c(a)-(b).  They will not "defer or give any specific weight, including controlling weight," to any particular medical opinion or prior administrative medical finding ("PAMF").  20 C.F.R. § 416.920c(a).  "The factors of supportability … and consistency … are the most important," and an ALJ must address them in crafting their decision.  20 C.F.R. § 416.920c(b)(2).  Therefore, an ALJ must articulate how relevant they found an opinion's objective medical evidence and supporting explanations.  *See* 20 C.F.R. § 416.920c(c)(1).  They must also assess how consistent a medical opinion or PAMF is with the other medical and nonmedical evidence in the record.  *See* 20 C.F.R. § 416.920c(c)(2).  An ALJ must consider, but does not necessarily need to

address, the factors outlined in 20 C.F.R. § 416.920c(c)(3)-(5).  Put simply, an ALJ's opinion can

survive review by the courts if it articulates "such relevant evidence as a reasonable mind might

accept to support a conclusion."  *Biesteck v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

> The non-exertional portion of Plaintiff's RFC limit him to

>> understand and follow simple instructions and directions; perform
>> simple tasks independently; maintain attention and concentration
>> for simple tasks; regularly attend to a routine and maintain a
>> schedule; handle simple, repetitive work-related stress in that the
>> claimant can make occasional decisions directly related to the
>> performance of simple tasks in a position with consistent job duties
>> that does not require the claimant to supervise or manage the work
>> of others; should avoid work requiring more complex interaction
>> or joint effort to achieve work goals; and can have no contact with
>> the public.

R. at 20.  The state reviewing psychologists, Drs. Keuthen and Coyle, assessed Plaintiff as

suffering at most moderate limitations in understanding and memory, sustained concentration

and persistence, social interaction, and adaptation.  *See* R. at 133-34, 152-53.  The Second

Circuit has held that an ALJ's assignment of an RFC for simple work is appropriate where

"[n]one of the clinicians who examined [him] indicated that [he] had anything more than

moderate limitations in [his] work-related functioning, and most reported less severe

limitations."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).

Plaintiff's argument that Drs. Keuthen and Coyle's opinions are contained in both the

categorical assessment sections and the explanatory notes of their Disability Determination

Explanations is difficult to countenance.  Dkt. 10 at 22-23.  The Disability Determination

Explanations state, in relevant part, that "[t]he questions below help determine the individual's

ability to perform sustained work activities. However, the actual mental residual functional

capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion."  R. at 133, 152.

However, as Plaintiff points out, Defendant's reliance on the Program Operations Manual System to illustrate this point is contradictory: Defendant argues, variously, that "internal procedural manual[s]," "internal guidance tool[s]," and "internal agency guideline[s]" lack the force of law and do not bind the agency.  *Id.* at 8 (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1989) (per curiam)) (quoting *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000); *Harper v. Comm'r of Soc. Sec.*, No. 09-CV-3803 (NGG), 2010 WL 5477758, at *4 (E.D.N.Y. Dec. 30, 2010)).  Whether the specific portions of HALLEX cited in Plaintiff's brief bind the Social Security Agency is discussed further in **Section V.C**, *supra*.  For now, Defendant does not adequately explain how HALLEX can have no binding effect on the Social Security Administration, but the Program Operations Manual System can.  *See* Dkt. No. 14 at 14.

In any case, Plaintiff's RFC reflects a higher degree of limitation than the state agency reviewing doctor's categorical findings would demand.  Dr. Keuthen explained her concentration and persistence limitation assignments by stating

> [Claimant] could attend to simple work tasks for 2-hour periods during an 8-hour day in a setting that was not fast-paced with strict time limits on task performance. He is easily irritated and would be prone to distraction if working in close proximity to others but could manage a more isolative work setting.

R. at 134.  She explained her social interaction limitations as follows:

> [Claimant] can become easily aggravated by others. He could manage a job that had limited public and co-worker contact. He could work for an employer who was understanding and not excessively critical.

*Id.*  Dr. Coyle explained his assigned limitations in understanding and memory by stating

"[claimant] can understand and remember simple instructions."  R. at 152.  Dr. Coyle explained

his sustained concentration and persistence limitations by stating

> [Claimant] can sustain [attention]/[concentration] for simple tasks
> and maintain effort for two hour periods over the course of an eight
> hour work day and standard work week in a setting permissive of
> some degree of self pacing.

R. at 153.  In the social limitations section, Dr. Coyle explained

> [Claimant is capable of brief superficial interactions with the
> general public on an infrequent basis. He can participate in typical
> interactions with coworkers and supervisors while completing
> simple tasks of a nonsocial and independent nature. He is able to
> maintain adequate personal grooming and hygiene.

*Id.*  And finally, in adaptation limitations, Dr. Coyle stated

> Stress tolerance is acceptable for stable work setting. [Claimant] is
> able to adapt to minor changes in routine. He benefits from
> external psychosocial support, but remains capable of independent
> goal directed behavior. He is aware of typical hazards. He can
> travel independently.

*Id.*

All of these limitations are substantively reflected in Plaintiff's RFC.  Regarding

concentration and persistence, the ALJ limited Plaintiff to "perform simple tasks independently;

maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a

schedule."  R. at 166.  Regarding Plaintiff's limitations to social interaction, the ALJ specified

that Plaintiff should not have to "supervise or manage the work of others; should avoid work

requiring more complex interaction or joint effort to achieve work goals; and can have no contact

with the public."  *Id.*  For understanding and memory, Plaintiff's RFC is limited to "understand

and follow simple instructions and directions."  *Id.*  And finally, for adaptation, Plaintiff's RFC

limits them to "simple, repetitive work-related stress."  *Id.*

The ALJ's RFC does not perfectly match either Dr. Coyle or Dr. Keuthen's conclusions, most acutely because both state agency doctors recommended a sedentary RFC.  R. at 136, 155. "[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).  The ALJ adopted the state agency reviewing doctor's mental RFC explanations and explained his physical RFC deviations to a degree sufficient to satisfy the substantial evidence standard.  There is no legal error here.

### III.   The ALJ supportably discounted greater limitations assessed by Plaintiff's treating source

The ALJ found the opinion of Licensed Clinical Social Worker ("LCSW") Charles Spears less persuasive.  R. at 27.  The ALJ noted that LCSW Spears' opinion does not contain "references to specific examinations or treatment records" that support his conclusions.  *Id.* (citing R. at 1789-806).  The ALJ concluded that the severity of symptoms indicated LCSW Spears' opinions is not well supported by his treatment records.  *Id.*  The ALJ noted specifically that Plaintiff's "lack of on-going signs of deficits in understanding, remembering, and carrying out tasks; maintaining his attention; and interacting with medical staff," eroded the persuasiveness of LCSW Spears' opinion.  *Id.*  Also, the ALJ outlined a contradiction between LCSW Spears' report that Plaintiff's "[a]nxiety and depression make it difficult for him to leave his house and be around crowds or people" and Plaintiff's reports that he "does socialize with others and throughout the record has reported that his social isolation is caused, at least in part, by other factors, including a lack of transportation, having nowhere to go, and the COVID-19 pandemic."  R. at 27-28.

LCSW Spears' opinion, in the form of two medical source statements, is a worksheet indicating a Plaintiff's symptoms, mental abilities, and aptitudes.  R. at 1782-86.  "There is no

rule that 'the evidentiary weight of a treating physician's medical opinion can be discounted by an ALJ based on the naked fact that it was provided in a check-box form.'" *Schillo*, 31 F.4th at 77 (quoting *Colgan v. Kijakazi*, 22 F.4th 353, 360-61 (2d Cir. 2022)). "An ALJ may, however, discount a treating physician's opinion–regardless of its form–if it is not supported by substantial evidence in the record." *Id.* Defendant raises the point that Drs. Keuthen and Coyle are psychological specialists, and their opinions can therefore be afforded greater weight by the ALJ. Dkt. No. 14 at 16; *see* 20 C.F.R. § 416.920c(c)(1). While true, the ALJ does not raise this point herself. *See* R. at 27-28. The ALJ did, however, justifiably conclude that LCSW Spears' opinion is not well supported. R. at 27. LCSW Spears' does not offer a narrative explanation of any of his conclusions except regarding the pain suffered by Plaintiff, stating "[a]nxiety and depression make it difficult for him to leave his house and be around crowds of people." R. at 1786. The ALJ concluded that the state agency reviewing doctors' opinions were more persuasive because they are supported by "detailed narrative reviews of the medical evidence," "consistent with the claimant's school records history of an incarceration, and conservative mental health treatment." R. at 27. "It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses … .'" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d. Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The ALJ assessed the persuasiveness of LCSW Spears' opinion in terms of supportability and consistency, and determined that it was less persuasive than the opinions of the state agency doctors. The ALJ's assessment of the medical opinions is not legally erroneous and is supported by substantial evidence, so the Court will not reweigh that evidence. *See Warren* 2016 WL 7223338, at *9.

**B.  The ALJ's failure to incorporate Plaintiff's prior SSI application in the instant record is not an error of law**

Defendant asserts that it was legal error for the ALJ not to include files from Plaintiff's prior applications in the evidentiary record.  Dkt. No. 10 at 15.  Defendant argues, correctly, that "the ALJ must review all of the available medical evidence, including and especially the medical records evaluated by the state agency physicians."  *Cyr v. Astrue*, No. 3:10-CV-1032, 2011 WL 3652493, at *3 (D. Conn. Aug. 19, 2021).  It is not at all clear, however, that the state agency doctors considered Plaintiff's prior applications in the instant case: Dr. Coyle's complete statement regarding Plaintiff's prior history was "several prior files, the most recent is a denial dated 8/30/2016; psych was severe."  R. at 145.  As an initial matter, if Dr. Coyle's discovery that Plaintiff's "psych was severe" in a previous adjudication biased her at all, it would seem to bias her in favor of finding Plaintiff to have severe psychiatric impairments in the instant case.  Dr. Coyle did, in fact, assess Plaintiff to have severe psychiatric impairments.  R. at 147-48 (stating "[p]sych is severe with mild to moderate limitations of function in critical areas," and assigning three "[s]evere" psychiatric impairments, namely "Depressive, Bipolar and Related Disorders," "Schizophrenia Spectrum and Other Psychotic Disorders," and "Attention Deficit/Hyperactivity Disorder").  In other words, the potential procedural error here resolved to the benefit of Plaintiff.

In any case, the ALJ met their burden to develop the record.  Plaintiff's counsel stated at the administrative hearing that "[t]he record is complete," but this endorsement alone does not relieve the ALJ of their obligation to develop the record.  R. at 120.  "[T]he social security ALJ, unlike a judge in a trial, must on behalf of all claimants … affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009).

26

The record before the ALJ, and now before the Court, is not sparse. *See Schillo*, 31 F.4th at 76. It contains educational records dating from September of 2008 (R. at 695-737), more than a thousand pages of medical documentation dating from September of 2017 (R. at 738-1781, 1787-2007), Plaintiff's own testimony (R. at 559-574, 599-608), and remarks from a treating source (R. at 1782-1786). The volume of evidence available in the instant case is not, itself, a compelling reason to determine that the ALJ properly developed the record, but Plaintiff has not identified a "specific record that was missing, much less explain[ed] how it would have affected [his] case." *Reices-Colon v. Astrue*, 523 F. App'x. 796, 799 (2d Cir. 2013).

The Second Circuit has held that an ALJ did not abuse their discretion in failing to subpoena a prior file where claimant was represented by counsel, his impairment was not in dispute, and counsel offered no other reasons that the ten-year old file might be relevant. *See DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). "The statutory duty of an ALJ to issue subpoenas or take other actions *sua sponte* as necessary to develop the record applies, of course, to all claimants … and not just those who appear *pro se*." *Id.* (citing 42 U.S.C. § 423(d)(5)(B)). "But because DeChirico *was* represented by counsel, because the fact of his impairment was not in dispute, and because counsel offered no other reasons that the ten-year old file might be relevant, we cannot day that the ALJ abused his discretion in failing to subpoena it on his own initiative." *Id.* In the case at hand Plaintiff was represented by counsel at the administrative hearing, counsel asserted "[t]he record is complete," all parties agree that Plaintiff suffers from a range of severe mental and physical impairments, and Plaintiff has not elaborated on what specific records should have been produced or how they would have changed the outcome. R. at 120. Plaintiff argues only that "the earlier evidence is still relevant and should be obtained to provide a longitudinal picture of Plaintiff's medical and educational history and to

compare the current evidence to the evidence in the prior claim's file." Dkt. No. 10 at 15. An ALJ is required to seek out additional evidence when "the records received [are] 'inadequate … to determine whether [the claimant is] disabled.'" *Brogan-Dawley v. Astrue*, 484 Fed. App'x. 632, 634 (2d Cir. 2012). The ALJ's failure here to obtain Plaintiff's prior files *sua sponte* is not a legal error requiring remand.

### C. The ALJ's failure to adhere to the requirements of HALLEX is not a reversible error in this case

The Second Circuit has not addressed the issue of whether HALLEX imposes non-discretionary duties on an ALJ. There is a split between the Fifth and Ninth Circuits concerning this issue. In *Moore v. Apfel*, the Ninth Circuit noted that HALLEX "conveys guiding principles, procedural guidance and information … include[ing] policy statements … ." 216 F.3d 864, 868 (9th Cir. 2000) (quoting HALLEX I-1-001). This declaration of purpose, as well as the fact that "the specific provision at issue in the instant case [] creates no substantive rights; it merely provides [Office of Hearing Operations] staff with internal procedures for assigning cases to ALJs after a remand," led the Ninth Circuit to conclude that "HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual." *Id.* at 868-69 (citing *Western Radio Services Co. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996)).

The Fifth Circuit in *Newton v. Apfel* agreed that HALLEX "does not carry the authority of law," but noted that "'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.'" 209 F.3d 448, 459 (5th Cir. 2000) (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). "If prejudice results from a violation, the result cannot stand." *Id.* (citing *Hall*, 660

F.2d at 119.)).  The Fifth Circuit relied on precedent from a line of cases originating with *United States ex rel. Accardi v. Shaughnessy*, where the Supreme Court held that vacatur of a deportation order was appropriate when the Board of Immigration Appeals and the Department of Justice failed to follow their own established procedures.  347 U.S. 260, 265-68 (1954).  The Supreme Court elaborated on the *Accardi* doctrine in *Morton v. Ruiz*, noting that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."  *Morton v Ruiz*, 415 U.S. 199, 235 (1974)

Mirroring the Fifth Circuit's reasoning in *Newton*, the Second Circuit has repeatedly held that "'where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.'"  *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016) (quoting *Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991)); *Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991) (quoting *Morton*, 415 U.S. at 235); *see also Fed. Defs. of New York v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) (stating "[u]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

The district courts of the Second Circuit generally accord some weight to HALLEX, but vary in their reasoning as to what amount and why.  In *Edwards v. Astrue*, the court noted "HALLEX policies are not regulations and [are] therefore not deserving of controlling weight." No. 3:10-CV-1017, 2011 WL 3490024, at *6 (D. Conn. Aug. 10, 2011) (citing, *e.g.*, *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003); *Martinez v. Astrue*, No. 07-CV-699, 2009 WL 840661, at *2 n.1 (D. Conn. Mar. 30, 2009)).  However, the *Edwards* court also noted that "[a]n

administrative agency is required to follow its own internal policies when they accord with or are more demanding than the statute or its regulations." (citing *Newton*, 209 F.3d at 459; *McCoy v. Barnhart*, 309 F.Supp. 2d 1281, 1284 (D. Kansas 2004) (noting that when "the HALLEX simply restates an administrative regulation, it is enforceable")). The court in *Cole v. Astrue* noted that, "[g]iven the permissive regulatory language governing expert medical advice," "HALLEX serves as a useful benchmark" for determining when an ALJ needs to seek expert medical advice. No. 06-CV-769, 2013 WL 4398974 *4 n.5 (S.D.N.Y. Aug. 7, 2013). The court in *Lakatos v. Comm'r of Soc. Sec.* cited *Edwards* and *Newton* for the propositions that "[a]n administrative agency is required to follow its own internal policies when they accord with or are more demanding than the statute or its regulations," and that the Commissioner should follow HALLEX policies when individual rights are affected, even when the policies are more "rigorous than would otherwise be required." No. 1:19-CV-00436, 2020 WL 3481450, at *5 n.2 (W.D.N.Y. Jun. 26, 2020) (citing *Edwards*, 2011 WL 3490024, at *6; *Newton*, 209 F.3d at 459). In *Janet R. v. Comm'r of Soc. Sec.*, the court noted that an ALJ's failure to comply with HALLEX reinforced their conclusion that the ALJ abused their discretion when they refused to admit a medical opinion. No. 1:19-CV-1100, 2021 WL 1054369, at *6 (W.D.N.Y. Mar. 19, 2021) (citing *Marcano v. Berryhill*, No. 17-CV-44442, 2018 WL 5619749, at *12 (S.D.N.Y. Jul. 13, 2018) (stating "Although failure to follow HALLEX procedures is not error per se, this HALLEX directive reinforces my conclusion that the ALJ erred at step three.")).

Assuming, for the sake of argument, that the Fifth Circuit's decision in *Newton* is binding on this Court, Plaintiff has not demonstrated that their individual rights are implicated by the cited sections of HALLEX. If disabled, Plaintiff has a right to SSI. *See* 42 U.S.C. § 1381a (stating "Every aged, blind, or disabled individual who is determined disabled under part A to be

eligible on the basis of his income and resources shall … be paid benefits by the Commissioner of Social Security.")  Plaintiff also has the right to have that "determination made according to the correct legal principles."  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  However, "[w]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."  *Johnson*, 817 F.2d at 986 (citing *Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir. 1986)).  Lacking any specific information about the contents of Plaintiff's prior files, or any guidance on how they might have changed the outcome in the instant case, and acknowledging that the ALJ's decision is supported by substantial evidence and otherwise made in accordance with the law, this Court cannot say "the substance of the [SSA regulations]" have been traversed.  *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. Jun. 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

## VI.     CONCLUSION

Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated:  March 20, 2024
       Albany, New York

Mae A. D'Agostino
U.S. District Judge